NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| SPENCER S., | |
|     Plaintiff, | |
|       v. | Civil Action No. 24-3932 (RK) |
| COMMISSIONER OF SOCIAL SECURITY, | **OPINION** |
|     Defendant. | |

**KIRSCH, District Judge**

    **THIS MATTER** comes before the Court on Spencer S.'s [1] ("Spencer" or "Plaintiff") appeal from the Commissioner of the Social Security Administration's (the "Commissioner") final decision, which denied Spencer's request for Supplemental Security Income benefits. (ECF No. 1.) The Court has jurisdiction to review this appeal under 42 U.S.C. § 405(g) and reaches its decision without oral argument pursuant to Local Civil Rule 78.1. For the reasons below, the Court **AFFIRMS** the Commissioner's decision.

**I.    BACKGROUND**

    In this appeal, the Court must answer the following question: does substantial evidence support Administrative Law Judge Donna Krappa's ("Judge Krappa") determination that Spencer was not disabled?

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

### A.    PROCEDURAL POSTURE

Spencer filed an application for Supplemental Security Income ("SSI") benefits on January 8, 2019. (Administrative Record ("AR") at 300–06).[2] The Social Security Administration (the "Administration") denied the request initially (*id.* at 161–65) and after reconsideration (*id.* at 171–73). Spencer requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 174.) Spencer's first telephonic hearing took place on April 30, 2020, wherein Judge Krappa heard testimony from Spencer, who was represented by counsel, and a vocational expert, Tanya Edghill. (*Id.* at 84–110.) On October 28, 2020, Judge Krappa issued a written decision finding that Spencer was not disabled. (*Id.* at 134–54.) Spencer requested review of the decision by the Appeal's Council, and, on May 13, 2021, the Appeals Council remanded the case. (*Id.* 155–60.) Spencer's second telephonic hearing took place on December 9, 2021, and Judge Krappa again heard testimony from Spencer, represented by an attorney, and a vocational expert, Elaine Cogliano ("VE"). (*Id.* at 42–83.) On December 7, 2022, Judge Krappa again determined that Spencer was not disabled. (*Id.* at 15–41.) Spencer then requested review of the decision by the Appeals Council, and this time, the Appeals Council determined that the reasons asserted by Spencer for appeal "do not provide a basis for changing the Administrative Law Judge's decision." (*Id.* at 1.)

This appeal followed. (ECF No. 1.) The Administrative Record was filed on May 17, 2024. (ECF No. 5.) On June 14, 2024, Spencer filed a moving brief (ECF No. 6, "Pl. Br."), the Commissioner responded (ECF No. 8, "Def. Br."), and Spencer filed a reply (ECF No. 9, "Pl. Rep."). The appeal is now ready for review by this Court.

---

[2] The Administrative Record ("Record" or "AR") is available at ECF Nos. 5-1 through 5-7. This Opinion will reference only page numbers in the Record without the corresponding ECF numbers.

### B.    JUDGE KRAPPA'S DECISION

On December 7, 2022,[3] Judge Krappa issued a comprehensive 19-paged, single-spaced decision, which set forth in detail her factual findings and citations to the record evidence, ultimately substantiating her conclusion that Spencer was not disabled under the prevailing Administration regulations. (*See generally* AR at 15–41.) As Judge Krappa explained, Spencer was born on October 24, 1999, which made her 18 years old on the date of the onset of her alleged disability, May 4, 2018. (*See id.* at 19.) Among other things, Spencer is a high school graduate with significant college credits who worked a number of jobs out of the home, had a driver's license, and had long-term interpersonal and romantic relationships. (*Id.* at 35.)

In reaching her decision, Judge Krappa applied the five-step process for determining whether an individual is disabled as set forth in 20 C.F.R. § 416.920(a). (*Id.* at 20–21.) At Step One, Judge Krappa found that Spencer had not engaged in substantial gainful activity since the application date, January 8, 2019. (*Id.* at 21 (citing 20 C.F.R. § 416.971 *et seq.*).)[4] At Step Two, Judge Krappa found that Spencer suffered from three severe impairments: (1) borderline personality disorder, (2) depressive disorder, and (3) anxiety disorder. (*Id.* (citing 20 C.F.R. § 416.920(c)).) At Step Three, Judge Krappa determined that Spencer did not have "an impairment or combination of impairments" that qualified under the Administration's listed impairments. (*Id.* at 22–23 (citing 20 C.F.R. §§ 416.920(d), 416.925, 416.926).) As part of the "Step Three" determination, Judge Krappa reviewed whether Spencer had extreme or marked limitations that

---

[3] This appeal concerns only Judge Krappa's December 7, 2022 decision, not her October 28, 2020 decision, which was remanded by the Appeals Council. (*See* AR at 134–54, 155–60.) Therefore, the Court need only review the December 7, 2022 decision herein.

[4] Although Spencer *did* work for pay after January 8, 2019, it is uncontested that "this work activity did not rise to the level of substantial gainful activity." (*Id.* at 21.)

might seriously limit her ability to function independently, appropriately, or effectively on a sustained basis. (*Id.* at 22.) In particular, Judge Krappa observed that Spencer, *inter alia*, "has been able to perform basic daily living activities, such as performing self-care activities, and cleaning her room. She also reported that she socialized with her family and her boyfriend; and was able to attend appointments and online college with little difficulty." (*Id.* at 23.) Spencer "attended two different college programs online . . . [and] has been able to achieve 81 college credits." Judge Krappa further noted that "after losing or quitting jobs, [Spencer] applied again for new jobs." (*Id.*) Accordingly, Judge Krappa determined that Spencer's mental impairments were not sufficiently severe as to meet the "Paragraph B" threshold. (*Id.* at 22–23.)

Then, as a precursor to Step Four, Judge Krappa announced that Spencer had the following Residual Functional Capacity ("RFC"):

> The claimant has the residual functional capacity to perform the physical demands of work at all exertional levels as defined under the Regulations. However, as to the mental requirements of work, I find that the claimant is only able to perform jobs: that are simple and repetitive; and that are low stress (that is, the work requires only an occasional change in work setting during the workday; only an occasional change in decision-making required during the workday; and if the work is production based, the production is monitored at the end of the day instead of consistently throughout the workday). The claimant is able to perform jobs; that require only occasional contact with coworkers and supervisors, but that involve no contact with the general public.

(*Id.* at 23, 34–35.)

In determining Spencer's RFC, Judge Krappa accounted for medical opinions from five doctors, detailing her analysis and findings of each across eight pages of the 19-paged decision[5]

---

[5] Neither party contests that Spencer has neither physical nor exertional limitations. Judge Krappa relied only on mental health records and opinions in determining whether Spencer's psychiatric impairments, like depression, anxiety, and bipolar disorder, precluded her from working.

(*See id.* at 27–34.) Three of these doctors—Christine Annibali, Marisol Valencia-Payne, and Christopher Williamson—treated Spencer on at least one occasion and issued opinions about her work limitations caused by her medical symptoms. (*Id.* at 27–28, 29–33.) Two more doctors—Jocelyn Fierstein and Fred Eisner—were state consultants who did not personally treat Spencer but made medical determinations based on a review of Spencer's records. (*Id.* at 32–33.) As required, Judge Krappa evaluated the persuasiveness of each doctor. She found the opinions of Drs. Annibali, Valencia-Payne, and Williamson each to be unpersuasive, largely because they determined that Spencer had significant work-related limitations or could not work at all, notwithstanding evidence that that Spencer had worked, completed and passed college courses, maintained platonic and romantic relationships, and was capable of daily functioning. (*Id.* 33–34.) Judge Krappa found the opinions of Drs. Fierstein and Eisner to be persuasive because they were more consistent with the longitudinal record, and noted some limitations but did not opine that Spencer was altogether incapable of working. (*Id.* at 33.) Ultimately, Judge Krappa noted that Spencer's issues did not stem from working, but rather "difficulty in dealing *with others*." (*Id.* at 34 (emphasis added).) Accordingly, Judge Krappa's RFC "limited [Spencer's] contact with others in the workplace." (*Id.*)

At Step Four, Judge Krappa found that Spencer had no "past relevant work" as defined by the administrative regulations,[6] and therefore she had no "past relevant work" to return to. (*Id.* at 35 (citing 20 C.F.R. § 416.965).) At Step Five, Judge Krappa heard testimony from the VE and

---

[6] Although Spencer did work multiple jobs, Judge Krappa found that those jobs did not rise to the level of "past relevant work" because she had not participated in substantial gainful activity. *See* 20 C.F.R. § 416.965(a) ("We consider that your work experience applies when it was done within the last five years, lasted long enough for you to learn to do it, and was substantial gainful activity.") Of course, Spencer was only thirteen years old—a middle school student—five years before her alleged onset date, and would not have had any gainful employment at that time.

concluded that "there are jobs in significant numbers in the national economy" that Spencer could perform. (*Id.* (citing 20 C.F.R. §§ 416.969, 416.969a).) In particular, the impartial expert testified that representative jobs that Spencer could perform, consistent with Judge Krappa's RFC, included a night janitor, a packer, a ticketer, and a sorter. (*Id.* at 35–36, 75–76.) Since Judge Krappa found that jobs existed in significant numbers in the national economy for an individual with Spencer's RFC, Judge Krappa determined that Spencer has not been under disability since January 8, 2019. (*Id.* at 36.)

## II.    **LEGAL STANDARD**

### A.    STANDARD OF REVIEW

The Court reviews the Commissioner's final decision to determine whether the Commissioner's findings are "supported by substantial evidence." 42 U.S.C. § 405(g). If the Appeals Council denies a claimant's request for review, "the ALJ's decision is the Commissioner's final decision." *Matthews v. Apfel,* 239 F.3d 589, 592 (3d Cir. 2001) (citation omitted). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Put differently, "[i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel,* 225 F.3d 310, 316 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). This evidentiary threshold "is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

The scope of the Court's review of the ALJ's decision is "quite limited." *Rutherford*, 399 F.3d at 552. On review, the Court may not "re-weigh the evidence or impose [its] own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Where the ALJ's findings of fact are supported

6

by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently." *Fargnoli v. Massanari,* 247 F.3d 34, 38 (3d Cir. 2001) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)).

**B.    ESTABLISHING ELIGIBILITY FOR DISABILITY INSURANCE BENEFITS**

A claimant may establish disability under the Social Security Act by proving that they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ applies a well-established "five-step sequential evaluation process," which requires considering whether the claimant:

> (1) is engaged in substantial gainful activity; (2) suffers from an impairment or combination of impairments that is "severe"; (3) suffers from an impairment or combination of impairments that meets or equals a listed impairment; (4) is able to perform his or her past relevant work; and (5) is able to perform work existing in significant numbers in the national economy.

*McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citing 20 C.F.R. §§ 404.1520(a)–(f), 416.920(a)–(f)). The claimant bears the burden at the first four steps, at which point it shifts to the Commissioner at Step Five. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)).

**III.    DISCUSSION**

Spencer appeals Judge Krappa's decision of non-disability. (*See* ECF No. 1.) Spencer raises two issues on appeal: *first,* Judge Krappa failed to properly evaluate the medical opinions in the record, and *second,* Judge Krappa failed to properly evaluate Plaintiff's own testimony. (*See* Pl. Br. at 1.) For the reasons explained below, the Court finds that the Commissioner's findings are supported by substantial evidence, and thus affirms Judge Krappa's decision.

A.    THE ALJ PROPERLY EVALUATED MEDICAL OPINIONS

In crafting Spencer's RFC, Judge Krappa evaluated opinion evidence from five medical professionals. Three of the professionals treated Spencer during her period of alleged disability: (1) Dr. Christine Annibali, (2) Dr. Marisol Valencia-Payne, and (3) Dr. Christopher Williamson. (*See* AR at 27–34.) Two more medical professionals, Dr. Jocelyn Fierstein and Dr. Fred Eisner, were state agency experts who reviewed Spencer's medical files but did not treat her personally. (*Id.* at 33.) The thrust of Spencer's argument is that Judge Krappa improperly found the opinions of the three treating physicians to be unpersuasive, and improperly found that opinions of the two non-treating state experts to be persuasive. (*See* Pl. Br. at 28 ("It is a hard swallow to say a doctor who reviews 4 months of records is more persuasive than the treating physicians and examiners who review not only those 4 months but have before them another 3 years of examinations and records of those exams.").)

It is not the Court's function to second-guess or substitute its judgment for that of the factfinder ALJ, but rather to ensure, consistent with its limited, circumscribed role, that the findings are supported by substantial evidence in the record. *See Fargnoli,* 247 F.3d at 38. The Court finds that Judge Krappa properly applied the relevant legal framework when evaluating the persuasiveness of each medical opinion, and appropriately incorporated the facts and opinions of each medical professional into her RFC analysis.

When making a disability determination, an ALJ must review and evaluate all medical opinions that are part of the record. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). However, not all medical opinions are created equal, or assessed equally. It is the sole province of the ALJ to consider medical opinions, decide how persuasive each medical opinion is, and articulate the persuasiveness of each opinion as part of the written determination. *See Cooper*

*v. Comm'r of Soc. Sec.*, 563 F. App'x 904, 913 (3d Cir. 2014) (citing 20 C.F.R. § 416.927). Before 2017, opinions by treating physicians were automatically given more weight than those by non-treating physicians, otherwise known as the "treating source rule." *See* 20 C.F.R. § 416.927(c)(2) ("Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s)."). For claims filed after March 27, 2017, like those in the instant matter, the regulations dictate that the Commissioner will consider the following factors when evaluating all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 416.920c(c).

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions" are the factors of supportability and consistency. *Id.* at §§ 404.1520c(a), 416.920c(a). Accordingly, the regulations require the ALJ to "discuss [the] supportability and consistency [factors]" when articulating her "consideration of medical opinions and prior administrative medical findings." *Lee Ann M. v. O'Malley*, No. 22-1104, 2024 WL 4184486 at *7 (D.N.J. Sept. 13, 2024) (citations omitted). "Supportability" is "the extent to which the medical source's opinion is supported by relevant objective medical evidence and explanations presented by the medical source." *Carolyn N. v. Comm'r of Soc. Sec.*, No. 22-4957, 2023 WL 8271767, at *5 (D.N.J. Nov. 30, 2023)

(quotation omitted). "Consistency" is "the extent to which the medical source's opinion is consistent with the record as a whole." *Id.* (quotation omitted).

When an ALJ evaluates a medical opinion, the ALJ is not required "to use particular language or adhere to a particular format in conducting [her] analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett*, 220 F.3d at 119–20). Instead, the Court must "ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Id.* This requirement governs the Court's review of each step of the ALJ's analysis, including her RFC determination. An ALJ's finding of a claimant's RFC must "be accompanied by a clear and satisfactory explication of the basis on which it rests." *Fargnoli*, 247 F.3d at 41 (quoting *Cotter v. Harris*, 642 F.2d 700, 704, 705 (3d Cir. 1981) (finding that the Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected")). However, the Court "examine[s] the ALJ's conclusions as to a claimant's RFC with 'the deference required of the substantial evidence standard of review.'" *Martin v. Comm'r of Soc. Sec.*, 547 F. App'x 153, 160 (3d Cir. 2013) (quoting *Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002)). Substantial evidence does not require highly detailed explanations, "[t]o the contrary, a reviewing court must 'uphold' even 'a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" *Garland v. Ming Dai*, 593 U.S. 357, 368 (2021) (cleaned up); *see also Cotter*, 650 F.2d at 482 ("[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice.")

The Court addresses each medical opinion in turn.

### 1. Dr. Christina Annibali

Judge Krappa began her review of Dr. Annibali's opinion and underlying evidence by noting that Dr. Annibali treated Spencer for "a period of only five (5) months," from October 3, 2018 to March 6, 2019, before writing her medical opinion. (AR at 27; *see id.* at 428.) Dr. Annibali diagnosed Spencer with "recurrent major depressive disorder, moderate without psychosis; generalized anxiety disorder; and borderline personality disorder." (*Id.* at 27.) Per Dr. Annibali, Spencer had never been hospitalized for any of her symptoms, which included feelings of guilt or worthlessness, appetite disturbance, decreased energy, intense and unstable interpersonal relationships, and suicidal ideation, among others. (*Id.*) In Dr. Annibali's medical opinion regarding Spencer's specific impairments based on her medical expertise, she wrote that Spencer had "moderate to marked" limitations in completing a workday without interruptions from psychological symptoms, performing at a consistent pace without rest periods, getting along with coworkers or peers without distracting them, and accepting instructions and responding appropriately to criticism from supervisors. (*See id.* at 440–441.) It was Dr. Annibali's opinion, Judge Krappa stated, that Spencer "would be absent from work as a result of her impairments or treatment more than three times per month." (*Id.* at 27.)

Judge Krappa contrasted this medical opinion with Dr. Annibali's longitudinal case notes, which showed Spencer as having a period of "ups and downs." (*Id.* at 27.) In March 2019, Spencer was "doing well with only passive and fleeting thoughts of suicidal ideation." (*Id.*) April 2019 was somewhat worse, with Spencer having a "bad week," "difficulties with interpersonal issues, school, and obtaining a job." (*Id.*) Spencer "reported getting a job at Payless, but quitting the job due to wanting to stay focused on school and her mental health." (*Id.*) In May, Spencer was "able to go to work and see her boyfriend despite her sad mood" and "asked to stop all antidepressants."

(*Id.*) She reported the ability to "use[] her coping skills at work and with her interpersonal stressors." (*Id.*)

Judge Krappa found Dr. Annibali's medical opinion "to not be persuasive." (*Id.* at 33.) Plaintiff contends that Dr. Annibali's opinions were internally consistent with her own case notes and externally consistent with the overall longitudinal record, including the opinions of Drs. Valencia-Payne and Williamson. (Pl. Br. at 21.) Plaintiff further argues that Dr. Annibali's opinions, which were based on months of treatment instead of a review of objective medical records, are especially persuasive in the psychiatric context, where objective laboratory testing is less useful. (*Id.* at 22 (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989).) Essentially, Plaintiff quarrels with Judge Krappa's persuasiveness determination.

Plaintiff's contentions are unavailing. "The presence of evidence in the record that supports" a conclusion contrary to the ALJ's conclusion "does not undermine the [ALJ's] decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764, 766 (3d Cir. 2009) (finding it "unnecessary" to emphasize contrary evaluations of the plaintiff because "the issue is whether the evidence and contentions presented by the Commissioner met the substantial evidence test"). Instead, as required, Judge Krappa evaluated Dr. Annibali's based on supportability and consistency. As to supportability, Judge Krappa assessed that despite Dr. Annibali's conclusion that Plaintiff had a series of marked limitations, Dr. Annibali's own notes from just a few weeks prior stated that Spencer reported she was doing "pretty good," that her "mood and anxiety had been manageable," that she had "go[ne] on vacation with her boyfriend to Atlantic City," and that "she had a job interview that went well." (AR at 33.) To the ALJ, an opinion of such marked limitations was not supportable based on the other objective evidence that Spencer, despite her challenges, was making progress in both her

personal and professional life. (*See id.*) This conclusion has substantial evidentiary support in the record.

In terms of consistency, Judge Krappa similarly determined that Dr. Annibali's opinions in March 2019 were not consistent with the overall record. (*Id.*) Throughout her opinion, Judge Krappa cited to record evidence showing that Spencer had already earned 81 college credits through online school— an accomplishment that required the ability to "maintain a school schedule, watch lectures, complete assignments[,] and take tests within the parameters set by her professors." (*Id.* at 22.) Spencer had a boyfriend for seven months, who she reported she saw regularly when she was dating. (*Id.* at 24.) She was also employed multiple times, both at Claire's, an accessories store, and Hanna Anderson, a clothing store, though she reported that she left Claire's because of difficulties with co-workers and supervisors. (*Id.*) Spencer was mobile and social; Judge Krappa indicated that "she would go out a few times a week," "was able to travel by driving and riding in a car," "had an active driver's license," and "spent time with others 'just hanging out and relaxing.'" (*Id.* at 25.)  Spencer's mother confirmed that Spencer was able to perform personal care rituals, watch television, read, write, and draw. (*Id.*)  Taken together, the record evidence depicts Spencer, despite her challenges, as a young woman who travelled, sought and earned job offers, went on dating apps, got back together with her previous boyfriend, spent time with her best friend, and took care of herself. (*Id.* at 33–34 (citing Ex. 5F, AR at 538; Ex. 2F, AR at 449; Ex. 6F, AR at 562; Ex. 7F, AR at 585, 591).) Additionally, although Judge Krappa acknowledged that Plaintiff had not worked consistently and moved around to different jobs, Plaintiff had only worked in roles that required her to interface with customers, which did not fit well with her personal anxieties. (*Id.*) Of course, by virtue of her youthful age, it is understandable that Spencer's work history would be somewhat limited. Plaintiff expressed that "she wanted to

apply for jobs that were more tolerable like working with animals." (*Id.* (citing Ex. 2F, AR at 468).)

Judge Krappa did not clearly delineate her analysis between supportability and consistency, and did not use those terms or cite to the regulation—but she did not need to do so. *Jones*, 364 F.3d at 505. While a factfinder, on this record, may hypothetically have weighed the evidence differently than Judge Krappa did, it is not the Court's role to second-guess the ALJ's factfinding or to weigh Dr. Annibali's opinions itself. *Chandler*, 667 F.3d at 359 ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations.") Instead, the Court is satisfied that Judge Krappa "fulfilled [her] duty in evaluating the evidence and explaining why [she] chose to credit some evidence over other evidence." *Pelliccia v. Dudek*, No. 24-428, 2025 WL 624262, at *10 (M.D. Pa. Feb. 26, 2025).

Plaintiff's additional contention that Dr. Annibali's opinion should have been given more weight because she treated Spencer is contrary to the Administration's post-2017 regulations. (*See* Pl. Br. at 29–30); 20 C.F.R. 416.927(c)(2). Although Dr. Annibali's opinion likely would have been subject to the old "treating source" rule, that rule no longer binds the Commissioner. A similar factor, "relationship with the claimant" is now just one of five factors for the ALJ to consider, but it is not one of the "most important factors." *Compare* 20 C.F.R. § 416.920c(c)(3) (considering length, frequency, purpose, and extent of the treatment relationship), *with id.* § 416.920c(b)(2) ("The factors of supportability . . . and consistency . . are the most important factors we consider."). Additionally, Judge Krappa was not obligated to explain how "relationship to the claimant" impacted evaluation of Dr. Annibali's medical opinion. *See id.* § 416.920c(b)(3) ("We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through

(c)(5) of this section."). Accordingly, the Court finds no error in Judge Krappa's decision not to find Dr. Annibali's opinion persuasive simply because she treated Spencer.

### 2. Dr. Marisol Valencia-Payne

Dr. Valencia-Payne examined Spencer only once—on April 14, 2020. (AR at 29 (citing Ex. 4F); *Id.* at 524.) As Judge Krappa explained, Dr. Valencia-Payne diagnosed Spencer with "posttraumatic stress disorder; bipolar II disorder; most recent episode depressed; social anxiety disorder; and borderline personality disorder." (*Id.* at 29.) Dr. Valencia-Payne also "indicated that [Spencer's] current psychiatric condition was significantly impairing her current level of functioning" and that Spencer "would likely experience episodes of significant decompensation or deterioration in a work or work-like setting, which would cause her to withdraw from the situation and/or experience an exacerbation of symptoms," and "be absent from work more than three times per month." (*Id.*) Dr. Valencia-Payne concluded that, "from a psychiatric and psychological point of view," Spencer "*is not able to be gainfully employed*, nor is expected to improve in the foreseeable future without consistent psychiatric and psychological treatment." (*Id.* at 528 (emphasis in original).)

In her written decision, Judge Krappa stated that she had "considered the opinions of Dr. Valencia-Payne but [did] not find them entirely persuasive as they are not supported by the claimant's overall treatment record and the references to the progress notes and treatment records supra." (AR at 34.) Judge Krappa reasoned that, despite the limitations Dr. Valencia-Payne opined, Spencer's "daily living activities and history of treatment showed that she has been capable of basic daily functioning." (*Id.*) Judge Krappa also explained that although "the record established some limitations, they are accounted for within the above residual functional capacity." (*Id.*)

For substantially the same reasons described in Section III.A.1, *supra*, Plaintiff argues that Judge Krappa erred in finding Dr. Valencia-Payne's medical opinion persuasive. Broadly, Plaintiff asserts that Dr. Valencia-Payne's medical opinion—like Dr. Annibali's—was consistent with a record that contained ample evidence of Spencer's "depressed mood, persistent or generalized anxiety, [] flat affect, feelings of guilt or worthlessness, hostility or irritability" and more. (Pl. Br. at 21.) Defendant, in turn, again argues that Judge Krappa appropriately reviewed the supportability and consistency of Dr. Valencia-Payne's medical opinion. (Def. Br. at 15–16.)

Here, as with Dr. Annibali, the Court finds that Judge Krappa analyzed the supportability and consistency of Dr. Valencia-Payne's medical opinion before determining that it was not persuasive. The supportability factor, in Judge Krappa's analysis, weighed against the persuasiveness of the opinion, because even though Dr. Valencia-Payne concluded that Spencer could not be gainfully employed, she also noted that Spencer "did not exhibit any symptoms of depression" and that she "was cooperative and compliant." (*Id.* at 29.) Additionally, despite identifying her mood as depressed and anxious, Spencer "exhibit[ed] a euthymic affect." (*Id.* at 526.) Judge Krappa also found that Dr. Valencia-Payne's opinion was inconsistent with other evidence in the record, including, for example, evidence that when Spencer was fully complying with her medication regimen as prescribed, "her condition improved, and she stabilized her mood and functioning." (*Id.* at 34.) Despite Plaintiff's contentions that Judge Krappa erred in her analysis, Judge Krappa's findings were supported by substantial evidence in the record. *Pelliccia*, 2025 WL 624462, at *10.

### 3.  Dr. Christopher Williamson

Dr. Christopher Williamson, a psychiatrist who evaluated Spencer on March 14, 2022, opined that Spencer had marked limitations in her ability to understand and remember complex

instruction, interact appropriately with the public, supervisors, and coworkers, and to respond appropriately to usual work situations. (AR at 713–14.) As Judge Krappa highlighted in her analysis, Dr. Williamson referred to Spencer consistently as male in his report, which undermined the credibility of his opinion. (*Id.* at 31; *see id.* at 711 ("Mr. [S.] presents for evaluation as a 22-year-old male."); *id.* at 712 ("Mr. [S.] presents for evaluation as a 22-year-old male with chronic psychiatric illness positive for depression, anxiety, and panic disorder.").)

Judge Krappa found Dr. Williamson's opinion to "not be persuasive." (AR at 34 (citing Ex. 10F).) Judge Krappa reasoned that his opinions "are not supported by or consistent with the medical evidence of the record in general, or with the one-time examination performed by Dr. Williamson himself. It appears that the opinions were based on the self-reports of the claimant." (*Id.*)

Plaintiff argues, as with Drs. Annibali and Valencia-Payne, that Dr. Williamson's opinions are internally consistent with his own findings, and consistent with the opinions of other physicians and the overall treatment record. (Pl. Br. at 23.) Defendant argues that Judge Krappa explained and supported her analysis, relying on the lack of supportability and consistency in Dr. Williamson's medical opinion. (Def. Br. at 17–18.)

Though the analysis of persuasiveness might well have been more clearly articulated, Judge Krappa's reasoning is supported by her broader recitation of Dr. Williamson's findings, set forth earlier in her lengthy, comprehensive decision. (*See* AR at 31); *see also Jones*, 364 F.3d at 505 (finding ALJ's analysis sufficient when "read as a whole"). Judge Krappa found Dr. Williamson's opinion to be unsupportable because, although he concluded that Spencer had a series of marked limitations, all of his actual observations of Spencer were to the contrary. Indeed, Dr. Williamson observed that Spencer "arrived on time," "was casually dressed and groomed," "was pleasant and

17

cooperative," showed "no evidence of a formal thought disorder," noted "no compulsions of thinking and/or behavior," exhibited verbalizations that were "clear, coherent and goal-directed" and had an affect that was "congruent throughout." (AR at 711–12.) As Judge Krappa noted, the only evidence that supported Dr. Williamson's opinions were Spencer's "self-reports," not anything that Dr. Williamson observed. *See Gaiambrone v Kijakazi*, No. 22-489, 2023 WL 6392737, at *5 (M.D. Pa. Sept. 29, 2023) (affirming ALJ's decision to find unpersuasive a medical opinion that relied primarily on self-reporting). For the same reasons provided above, Judge Krappa also found that Dr. Williamson's testimony was inconsistent with the longitudinal record. (*Id.* at 34.) The Court finds that there is substantial evidence in the administrative record to support Judge Krappa's evaluation of Dr. Williamson's medical opinion.

### 4. State Examiners

Examiners from the New Jersey Division of Disability Services ("DDS") reviewed Spencer's medical records, but did not examine her in person. (*See id.* at 115, 127.) The two consultants, Dr. Fred Eisner and Dr. Jocelyn Fierstein, opined that Spencer "had the ability to perform work at all exertional levels" and that Spencer had moderate restrictions in the areas of "understanding and memory; sustained concentration and persistence; social interaction; and adaption." (*Id.* at 32.) Importantly, as Judge Krappa recounted, "it was opined that [Spencer] had no significant restrictions in regard to her abilities to remember locations and work like procedures, and understand, remember, and carry out very short and simple instructions." (*Id.*) Drs. Eisner and Fierstein opined that Spencer "had no significant limitation regard[ing] the ability to ask simple questions or request assistance." (*Id.*)

Judge Krappa found these opinions to be "persuasive because they are supported by and consistent with the medical evidence of record." (*Id.* at 33.) However, she concluded that "their

persuasiveness is reduced because while these opinions were rendered by doctors with program knowledge, any deference that might ordinarily be afforded these assessments . . . is diminished by the fact that the consultants did not have the opportunity to examine the claimant or review the evidence received after the file review was complete." (*Id.*) Plaintiff argues that this evaluation of persuasiveness—finding the medical opinions persuasive, but also that persuasiveness reduced—is "confusing" and therefore inadequately articulated. (Pl. Br. at 27–29.)

The Court does not find this articulation or reasoning confusing. Judge Krappa determined and articulated that she found the opinions to be supportable and consistent with the record, but also evaluated the DDS opinions based on other factors. (AR at 33.) Although supportability and consistency are the most important factors for an ALJ to consider, they are not the only factors. *See* 20 C.F.R § 416.920c(c). The fifth factor, under the header "other factors," allows the Commissioner to "consider whether new evidence we receive after the medical source made his or her medical opinion . . . makes the medical opinion [under review] . . . more or less persuasive." *Id.* § 416.920c(c)(5). Judge Krappa undertook this "fifth factor" analysis and determined that other evidence, which came into the record "after their file review was complete," made their opinion less persuasive. (AR at 33.) This analysis benefited Spencer in the ultimate RFC determination. Judge Krappa incorporated *more* limitations into Spencer's RFC than what Drs. Eisner and Fierstein recommended. (*Id.*) As Judge Krappa explained, "the opinions of the DDS medical consultants did not address the claimant being off task or absences. The [] residual functional ability *includes* these restrictions." (*Id.* (emphasis added).)

Aside from the ALJ's articulation of persuasiveness, Plaintiff contends that "[a]ny heavy reliance on the non-examining consultants is contrary to the rule of the Third Circuit." (Pl. Br. at 29 (citing *Dorf v. Bowen*, 794 F.2d 896, 901–02 (3d Cir. 1986)).) In fact, the controlling regulations

19

indicate the opposite. State psychological consultants "'are highly qualified and experts in Social Security disability evaluation,' . . . whose 'opinions merit significant consideration.'" *Amaya v. Comm'r of Soc. Sec.*, 2020 WL 6336181, at *3 (D.N.J. Oct. 29, 2020) (quoting 20 C.F.R. § 416.913a(b)(1) and *Chandler*, 667 F.3d at 361); *see also Becker v. Kijakazi*, 2022 WL 1128994, at *12–13 & n.6 (E.D. Pa. Apr. 14, 2022) (affirming ALJ's decision to find a "non-treating, non-examining consultant[] who reviewed a limited record" more persuasive than the treating physicians). Accordingly, the Court concludes that Judge Krappa's evaluation of the state examiner opinions was supported by substantial evidence, and finds no error in Judge Krappa's determination that the state examiner opinions were more persuasive than the treating physician opinions.

### B.    THE ALJ PROPERLY EVALUATED PLAINTIFF'S MEDICAL TESTIMONY

At her initial telephonic hearing, Spencer testified as to her own symptoms, *i.e.*, her "own description or statement of . . . her physical or mental impairment." *See* SSR 16-3p. These statements about symptoms "will not alone establish" disability, but might, in conjunction with other medical evidence, lead to a finding of disability. *See* 20 C.F.R. § 416.929(a); *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017). The administrative regulations articulate a two-step process that the Commissioner must follow to determine whether a claimant's alleged symptoms limit a claimant's ability to work. 20 C.F.R. § 416.929(d). Plaintiff contends that Judge Krappa failed to follow this mandatory process, and therefore improperly evaluated Spencer's subjective testimony. (Pl. Br. at 31–34.)

The evaluation process begins once the claimant states her subjective symptoms. SSR 16-3p ("We define a symptom as the individual's own description or statement of his or her physical or mental impairments."). In the first step of the process, the ALJ must determine "whether there

is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p; *see also Hartranft*, 181 F.3d at 362. Second, "if the ALJ finds that such an impairment exists, the ALJ must 'evaluate the intensity and persistence' of the symptoms and the effects that those symptoms have on the individual's ability to work." *Lori C. v. Comm'r of Soc. Sec.*, No. 23-4369, 2024 WL 4803787, at *9 (D.N.J. Nov. 15, 2024) (citation omitted). An ALJ "has wide discretion to weigh the claimant's subjective complaints [] and may discount them when they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citations omitted). "Examples of objective evidence include whether a claimant has sought treatment, or taken medication, to alleviate their pain." *Id.*

At the first step of this analysis, Judge Krappa found that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR at 25.) She further identified these impairments as "borderline personality disorder, depressive disorder, and anxiety disorder." (*Id.*) No party contests these findings. At the second step, Judge Krappa determined that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*) Here, Plaintiff argues that "[t]he ALJ's brief evaluation of [Spencer]'s subjective statements is insufficient." (Pl. Br. at 33.)

As discussed at length above, Judge Krappa determined that Spencer's symptoms did not impair her ability to work because she had worked in the past, and had shown a willingness and ability to do work in the future that did not implicate her various impairments. (AR at 33–34, 54.) Specifically, at the time that she complained of her various symptoms, she also worked at multiple different jobs (*id.* at 32–34), had a boyfriend who she saw regularly (*id.* at 34, 62), had a best friend

who she saw regularly (*id.* at 34, 72), earned 81 credits in online college (*id.* at 34, 52, 430), and was able to get herself to and from the places that she needed to go (*id.* at 34, 62). Many of Spencer's issues at work, Judge Krappa noted, stemmed from working with others and working with members of the general public. (*Id.* at 34.) Indeed, Spencer conceded that most of her jobs were in the retail sector, which required interacting with customers. (*Id.* at 54.) Judge Krappa reasoned that a different job, which did not require public interaction, would reduce the limiting effects of Spencer's symptoms. (*Id.* at 34.) Judge Krappa noted these facts over the course of many pages in her decision, and routinely referred to them. (*See id.* at 23–35.) "Read as a whole," Judge Krappa's analysis was quite extensive and incorporated lots of objective evidence in the record to determine that Spencer's symptoms would not be sufficiently intense or persistent as to limit her ability to work. *Jones*, 364 F.3d at 505.

The parties disagree as to the sufficiency of Judge Krappa's stated conclusion that the effects of Spencer's symptoms "are not entirely consistent with the medical evidence and other evidence in the record." (*See* AR at 25.) Plaintiff contends that this is mere "boilerplate language"—a "conclusory statement that [Spencer's] allegations are not supported by other unspecified evidence." (Pl. Br. at 33.) Plaintiff cites to a series of cases rejecting "boilerplate language," but those cases are distinguishable. In *Parker v. Astrue*, for example, an ALJ wrote that "claimant's statements concerning the intensity, persistent, and limiting effects of [claimant's] symptoms are not entirely credible." 597 F.3d 920, 921 (7th Cir. 2010). Judge Posner referred to this line as "meaningless boilerplate," and noted disapprovingly that other ALJs used the same language in their opinions. *Id.* at 921–922. But a more fulsome read of Judge Posner's objection to the ALJ's determination reveals it was not the "boilerplate language," but rather the fact that the ALJ concluded there was no medical evidence to support claimant's allegations of extreme

pain, without considering evidence in the record that supported the possibility that there were many possible sources of pain or failed medical procedures. *Id.* at 922. The ALJ's unsubstantiated medical analysis—not the language itself—prompted the court's reversal of the ALJ's decision. *Id.* In Spencer's case, unlike in *Parker*, the ALJ undertook an exhaustive analysis of treatment notes, and determined with sufficient specificity that there were jobs that could alleviate Spencer's symptoms.

Plaintiff similarly cites *Gilchrist v. Berryhill*, where the Honorable Jose Linares, U.S.D.J. (ret.) remanded an ALJ's determination because the ALJ "set[] forth that the reasons are explained in her decision, however, the opinion fail[ed]to provide sufficient analysis to support the finding." No. 16-9209, 2017 WL 3592443, at *6 (D.N.J. Aug. 18, 2017). Here, too, the court's issue was not with the phraseology that the ALJ used, but with the lack of sufficient analysis. *Id.* In Spencer's case, Judge Krappa coupled her allegedly "boilerplate" language with substantial analysis. As these cases demonstrate, it is not the language used in the ALJ's opinion that is dispositive—it is the analysis. *See, e.g.*, *Jones v. Kijakazi*, No. 24-1074, 2022 WL 1016610, at *10 (D. Del. Apr. 5, 2022) ("Reliance on boilerplate language does not inevitably lead to a deficient administrative analysis where, as here, the ALJ proceeds to consider the evidence in the record as a whole.").

Accordingly, the Court finds that the ALJ's determination that Spencer's symptom testimony did not establish disability was supported by substantial evidence.

**CONCLUSION**

Having reviewed the record as a whole, the decision of the Commissioner is **AFFIRMED.** An appropriate Order accompanies this Opinion.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

<u>Dated</u>: March 26, 2025

24